AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Igor Kazhdan a/k/a "Alex Stanton"<br><br>*Defendant(s)* | )<br>)<br>) Case No. 22-6066-Hunt<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Dec 5-22, 2021__ in the county of __Miami-Dade and Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 50 U.S.C. § 4819 | Export Control Reform Act |
| 18 U.S.C. § 554(a) | Outbound Smuggling |
| 13 U.S.C. § 305 | Filing False or Misleading Information |

This criminal complaint is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

_____
Complainant's signature

Robert Cunniff, Special Agent OEE-BIS
*Printed name and title*

Sworn to before me and signed in my presence. by telephone

Date: 2/10/2022

_____
Judge's signature

City and state: Ft. Lauderdale, Florida    Patrick M. Hunt, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLIANT

I, Robert Cunniff, being first duly sworn, hereby states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint charging Igor Kazhdan a/k/a "Alex Stanton" who knowingly conspired to smuggle BIS export controlled electronics from the United States to Russia, and did so, in violation of 50 U.S.C. § 4819 (Export Control Reform Act), 18 U.S.C. § 554(a) (Outbound Smuggling), and 13 U.S.C. § 305 (filing false or misleading information).

1. I, Robert Cunniff, am a Special Agent with the United States Department of Commerce ("DOC"), Bureau of Industry and Security ("BIS"), Office of Export Enforcement ("OEE") and have been since January 2017. I am currently assigned to the Miami Field Office. My primary duty as a BIS-OEE Special Agent is to investigate the unlawful export and re-export of U.S. goods and technology. I have conducted and participated in investigations of violations of United States laws relating to the unlawful export of U.S. goods and technology restricted for export for reasons of National Security, Anti-Terrorism, and Regional Stability.

2. Before my current position with BIS-OEE, I worked in the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") in various capacities from 2009 to 2017. In particular, between 2009 and 2015, I was an Intelligence Research Specialist for the ICE-HSI's Trade Transparency Unit where I analyzed international trade transactions searching for indicators of trade-based money laundering and fraud. Between 2015 and 2017, I was a Special Agent. As a Special Agent with ICE-HSI, I was responsible for investigating the unlawful import and export of goods and money into and out of the United States

1

3. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## OVERVIEW

4. BIS-OEE and the FBI are currently investigating Igor KAZHDAN a/k/a "ALEX STANTON" ("KAZHDAN")[1] for suspected violations of U.S. export control laws relating to his exports of goods to Russia.

5. KAZHDAN, a United States citizen residing in the Southern District of Florida, is the owner of IK TECH CORPORATION ("IK TECH"), a microelectronics distribution company located in Dania Beach, FL, which is also KAZHDAN's residence. According to the State of Florida, Division of Corporations, IK TECH was registered with the State of Florida on or about July 7, 2020, by KAZHDAN.

6. GEOSAT MICROWAVE LLC ("GEOSAT") is a corporation that, according to the State of Florida, Division of Corporations, is also owned by KAZHDAN and registered to the same location as IK TECH in Dania Beach, FL.

## RELEVANT LAWS AND REGULATIONS

*Submission of False or Misleading Export Information*

7. Title 13, United States Code, Section 305 makes it a federal crime for any person to knowingly fail to file or knowingly submit false or misleading export information through the Shippers Export Declaration ("SED") (or any successor document) or the Automated Export System ("AES").

---

[1] According to documents filed in or around 2014 in a federal civil lawsuit (3:12-CV-00674-WHQ-NLS), KAZHDAN utilizes the alias ALEX STANTON for business purposes.

2

### *Smuggling Goods from the United States*

8. Title 18, United States Code, Section 554(a), makes it a federal crime to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article, or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

### *The Export Control Reform Act and the Export Administration Regulations*

9. The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that "[t]he national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled . . . ." 50 U.S.C. § 4811(2). To that end, ECRA grants the President the authority to control "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. Id. at § 4812(b). ECRA further grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. Id. at § 4813(a).

10. Pursuant to ECRA, the Department of Commerce ("DOC") reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign

3

policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be exported lawfully from the United States or re-exported lawfully from one foreign destination to another.

11. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN has export control requirements depending on the destination, end user, and end use.

12. At all times relevant to this investigation, the TGA2704-SM Qorvo amplifier ("CCL ITEM 1") and the QPA2211D Qorvo amplifier ("CCL ITEM 2") were classified under ECCN 3A001 on the Commerce Control List ("CCL") and required a license to export to Russia. CCL ITEM 1 is described by the manufacturer as "ideally suited to support both commercial and defense related applications" and further stated that typical uses are "Communication Systems, Point-to-Point Radio, EW Signal Jammers, and Repeaters / Boosters / DAS." CCL ITEM 2 is described by the manufacturer as "ideally suited to support satellite communications and 5G infrastructure" and further stated that typical uses are "Communications, Point to point communications, and Space communications." CCL Item 1 also required, with limited exceptions not applicable here, a license for export to Finland. CCL ITEM 3 was categorized as ECCN 3A611 and requires a license to export to Russia. CCL ITEM 3 is described by the manufacturer as "The 12020-1460-XXX is the couple control cable for the RF-5382H-CU. The cable allows control signals to travel from the power amplifier to the coupler so that it can tune correctly."

13. Items categorized on the CCL as ECCN 3A001, such as CCL ITEM 1 and CCL ITEM 2, are controlled by BIS for Anti-Terrorism, National Security and Regional Stability

4

reasons. Items categorized on the CCL 3A611 such as CCL ITEM 3 are controlled by BIS for National Security and Regional Stability reasons.

14. Items such as CCL ITEM 3 are also referred to as "600 Series" commodities. "600 Series" refers to ECCNs in the "xY6zz" format on the CCL, for example 3A611. Items controlled under the "600 Series" were previously controlled on the United States Munitions List (USML) or are covered by the Wassenaar Arrangement Munitions List, which is a multilateral agreement between 42 nations concerning export controls on weaponry. In sum, 600 Series products are intended for use in weapons systems and military equipment and are subject to national security and regional stability controls.

15. Electronic Export Information ("EEI") must be filed via the Automated Export System for shipments of that require a license for export from the U.S. Government.

## ***PROBABLE CAUSE***

16. According to BIS databases, neither KAZHDAN nor IK TECH have a BIS export license.

17. The investigation has revealed that KAZHDAN, using his above-described business alias STANTON, orders parts, including BIS export-controlled items, from U.S. suppliers and has them delivered to his residence in Dania Beach, FL. KAZHDAN then exports those parts to Russia and Finland without a BIS export license and by providing false or misleading information on the EEI in violation of the EAR.

18. For example, in early November 2021, your affiant received information from a BIS-OEE Field Office in California about IK TECH. The information that was provided to BIS-OEE stated IK TECH was ordering ECCN 3A001 electronic parts and certifying on the End Use

5

Statements ("EUS") that GEOSAT in California was the user of these parts. Notably, the address provided for GEOSAT appeared to be residential.

19. On or about November 9, 2021, your affiant learned that IK TECH was purchasing sixty (60) units of CCL ITEM 1. On or about October 28, 2021, a U.S. supplier ("US Supplier 1") informed KAZHDAN (using the alias STANTON), by email, that the items he was ordering were export restricted under ECCN 3A001, and that an EUS would be required to proceed with the order. On October 30, 2021, KAZHDAN (using the alias STANTON), filled out and signed the EUS and stated CCL ITEM 1 had no end user yet. On the EUS, KAZHDAN (using his alias STANTON) signed that he acknowledged the items were export controlled, needed permission from the United States Government to export, and that diversion contrary to law is prohibited.

20. On or about November 10, 2021, US Supplier 1 informed STANTON (KAZHDAN) by email that they only had thirty-six (36) pieces in stock of CCL ITEM 1 and the supplier could ship thirty-six (36) pieces the following week, and then the balance on December 3, 2021.

21. On or about November 18, 2021, US Supplier 1 shipped 36 of CCL ITEM 1 to IK TECH using FedEx under tracking number 295289670011639. According to that tracking number, the shipment was delivered on November 23, 2021. On November 18, 2021, US Supplier 1 emailed the invoice to STANTON (KAZHDAN), which contained language at the bottom stating that the listed items are subject to the EAR, and that any export must be made in accordance with the EAR. The invoice also listed the ECCN for CCL ITEM 1 as 3A001.

22. On or about November 23, 2021, IK TECH ordered fifty (50) CCL ITEM 2 from US Supplier 1 On the same day, KAZHDAN (using the alias STANTON) emailed US Supplier 1 that he hoped they could ship the forty (40) units in stock as soon as possible. In the same email,

KAZHDAN (using the alias STANTON) attached the EUS, which stated the ultimate consignee was GEOSAT, located at 1278 Starview Dr, Vista, California, and that they were manufacturing block up converters.[2] According to public records, GEOSAT has been a registered company in Florida since July 2020. KAZHDAN (using the alias STANTON) did not list an end user and wrote on the EUS that there was not an end user yet for CCL ITEM 2, but did state the parts were for the development and stock of 12W-80W Ka-Band BUC, a block up converter which is used in the transmission of satellite signals. On the EUS, KAZHDAN (using the alias STANTON) signed an acknowledgement that the items were export controlled, needed permission from the United States Government to export, and that diversion contrary to law is prohibited.

23. On or about December 5, 2021, IK TECH exported thirty-six (36) of CCL ITEM 1 to SIBERICA OY in Vantaa, Finland without a BIS export license. The quantity and part number shipped to Vantaa, Finland match the quantity and part number of the November 18, 2021, shipment of BIS export-controlled amplifiers from the U.S. supplier 1 to IK TECH.

24. Your affiant conducted open-source research on SIBERICA OY (http://siberica.fi/en/) and discovered SIBERICA is a freight forwarder in Finland. On the EEI, which listed the Internal Transaction Number ("ITN") X20211201049645, CCL ITEM 1 is declared as EAR99[3] not 3A001 as listed on the invoice sent to STANTON (KAZHDAN) from the U.S. supplier 1. The DHL tracking number on this package is 3805264923. The invoice submitted to DHL from IK TECH states "These commodities, technologies of software were exported from

---

[2] A block up converter is used in the transmission of satellite signals.

[3] EAR99 items generally consist of low-technology consumer goods and do not require a license in many situations

7

the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited." In my training and experience, exporters will utilize overseas freight forwarders to create another layer to the international transaction in order to obscure the true end use and end user of export-controlled items.

25. On or about December 10, 2021, US Supplier 1 shipped the remaining twenty-four (24) units of CCL ITEM 1 to IK TECH, by FedEx under tracking number 295289670017402. The package was delivered on December 15, 2021. On December 10, 2021, US Supplier 1 emailed the invoice to STANTON (KAZHDAN), which contained language at the bottom stating that the listed items are subject to the EAR, and that any export must be made in accordance with the EAR. The invoice also listed the ECCN for CCL ITEM 1 as 3A001.

26. On or about December 13, 2021, US Supplier 1 shipped forty (40) units of CCL ITEM 2 to IK TECH via FedEx under tracking number 295289670018317. The package was delivered on December 20, 2021. On December 13, 2021, U.S. supplier 1 emailed the invoice to STANTON (KAZHDAN), which had language at the bottom stating that the listed items are subject to the EAR, and that any export must be made in accordance with the EAR. The invoice also listed the ECCN for CCL ITEM 2 as 3A001.

27. On or about December 21, 2021, an EEI was filed in AES by DHL. The EEI, which listed ITN X20211221242480, provided the date of export as December 22, 2021, and an ultimate consignee as Device Consulting in Saint Petersburg, Russia. The items were declared as sixty-four (64) electronic components with a classification of EAR99 on the EEI.

28. According to the EEI, on or about December 22, 2021, the items were exported to Russia from IK TECH.

29. On or about December 27, 2021, your affiant became aware of this export by IK TECH, and contacted DHL to request a copy of the commercial invoice used to file the EEI..

30. Upon receiving the invoice from DHL, your affiant discovered that the items exported were falsely declared as EAR99 electronic components. According to the invoice, the package included twenty-four (24) units of CCL ITEM 1 and forty units of (40) CCL ITEM 2, which are both on the CCL under ECCN 3A001. The quantity (64) and part numbers (CCL ITEM 1 and CCL ITEM 2), referenced supra ¶¶25-26, also match the quantity and part numbers of the two most recent shipments of BIS export-controlled amplifiers from the U.S. supplier. The invoice submitted to DHL from IK TECH states on the invoice that "These commodities, technologies of software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited." In my training and experience, it is tradecraft for exporters with knowledge of the EAR and BIS license requirements to declare export-controlled items as EAR99 on the EEI to evade scrutiny by BIS/OEE upon export.

31. On or about December 28, 2021, your affiant requested that DHL redeliver the shipment of CCL ITEM 1 and CCL ITEM 2 to the United States from Russia, but DHL could not return it.

32. On or about December 29, 2021, CCL ITEM 1 (24 units) and CCL ITEM 2 (40 units) were delivered in Russia by DHL. This was verified with DHL directly, and by tracking the package using the packages tracking number 3439000191.

33. On or about January 17, 2022, your affiant became aware that IK TECH was attempting to purchase an additional 200 units of CCL ITEM 1 from US Supplier 1.

34. On or about January 17, 2022, IK TECH submitted a EUS to US Supplier 1. The EUS stated there was no end user yet, and that the order of CCL ITEM 1 was for initial

development and samples for evaluation. On the EUS, KAZHDAN (using the alias STANTON) signed an acknowledgement that the items were export controlled, needed permission from the United States Government to export, and that diversion contrary to law is prohibited. Based on my training and experience, knowledge, and patterns of this investigation, I believe these 200 units of CCL ITEM 1 will be exported unlawfully to Russia directly or via a third country.

35. On or about January 27, 2022, US Supplier 1 shipped 200 of CCL ITEM 1 to IK TECH via FedEx tracking number 295289670031118.

36. On or about February 2, 2022, the 200 units of CCL ITEM 1 were delivered to IK TECH by FedEx.

37. On or about February 1, 2022, your affiant discovered that IK TECH ordered parts including CCL ITEM 3 from a second U.S. Supplier ("US Supplier 2"). The parts including CCL ITEM 3 shipped from US Supplier 2 to IK TECH on or about January 28, 2022, under FedEx tracking number 501807295973, and arrived on February 1, 2022.

38. In emails provided by US Supplier 2 to your affiant between STANTON (KAZHDAN) and US Supplier 2, STANTON (KAZHDAN) stated the end user for the parts including CCL ITEM 3 was an identified company in Germany ("German Company 1").

39. According to records obtained by BIS, a U.S. Company ("USCom1") previously sold export-restricted components to German Company 1 on several occasions, including Qorvo microwave amplifiers on two occasions in July 2019.

40. Your affiant learned that Import Genius (IG), which is a fee-based service that provides global trade data collected from multiple countries including Russia, showed exports of amplifiers and related electronics from German Company 1 in Germany to SMT-ILOGIC and

DEVICE CONSULTING LLC in Russia in and around a similar timeframe as the U.S. exports in 2019.

41. Through my training and experience I have learned about the patterns, methods, and conspiracies by which items are unlawfully exported from the United States to restricted destinations or for restricted end uses. I know that a typical method of unlawfully procuring items from the United States is to have those items shipped through a third country to which the export of certain commodities requires no prior license or qualifies for a license exception under the EAR such as Germany. In procuring items under unlawful circumstances, export violators nearly always provide false end user information to conceal the true nature of the transaction.

42. While conducting further research on prior exports of IK TECH, your affiant discovered that on April 18, 2020, IK TECH exported eighty (80) units of CCL ITEM 2 to SMT-ILogic in Russia without a BIS export license under ITN X20200418077994.

///

///

///

## CONCLUSION

43.  For all the reasons stated above, your affiant submits that there is probable cause to believe that Igor KAZHDAN a/k/a "ALEX STANTON" committed violations of 50 U.S.C. § 4819 (Export Control Reform Act), 18 U.S.C. § 554(a) (Outbound Smuggling), and 13 U.S.C. § 305 (filing false or misleading information) by exporting BIS controlled electronics from the United States to Russia and Finland.

Robert Cunniff, Special Agent
Bureau of Industry and Security
Office of Export Enforcement

Attested to by the applicants in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone, this 10th of February 2022.

HONORABLE PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA